People v Austin (2023 NY Slip Op 01442)

People v Austin

2023 NY Slip Op 01442

Decided on March 17, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 17, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CURRAN, MONTOUR, AND OGDEN, JJ.

976 KA 16-01153

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SEAN AUSTIN, DEFENDANT-APPELLANT. 

DAVID J. PAJAK, ALDEN, FOR DEFENDANT-APPELLANT.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (HARMONY A. HEALY OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Erie County (Russell P. Buscaglia, A.J.), rendered June 4, 2014. The judgment convicted defendant upon a jury verdict of murder in the second degree (two counts), robbery in the first degree (three counts), and robbery in the second degree (five counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of two counts of murder in the second degree (Penal Law § 125.25 [1], [3]), three counts of robbery in the first degree (§ 160.15 [2], [4]), and five counts of robbery in the second degree (§ 160.10 [1], [2] [b]). The conviction arises from six separate robberies that took place in the City of Buffalo over a period of three months; during one of the robberies, the victim was shot and killed.
We reject defendant's contention that Supreme Court erred in refusing to suppress evidence seized during a warrantless search of his home. The People established at the suppression hearing that the search of the home was lawful pursuant to the emergency doctrine exception to the warrant requirement (see People v Gibson, 117 AD3d 1317, 1318-1320 [3d Dept 2014], affd 24 NY3d 1125 [2015]; People v Turner, 175 AD3d 1783, 1783 [4th Dept 2019], lv denied 34 NY3d 1082 [2019]; see also People v Stevens, 57 AD3d 1515, 1516 [4th Dept 2008], lv denied 12 NY3d 822 [2009]). The emergency doctrine exception comprises "three elements: (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property and this belief must be grounded in empirical facts; (2) the search must not be primarily motivated by an intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched" (People v Doll, 21 NY3d 665, 670-671 [2013], rearg denied 22 NY3d 1053 [2014], cert denied 572 US 1022 [2014]).
Here, police witnesses testified during the suppression hearing that, when they responded to a call of a robbery, the victim informed them that he had been robbed by four individuals, one of whom was armed with a rifle. The victim further stated that the individuals had fled behind a row of nearby houses. As the officers neared the area identified by the victim, a witness called out from one of the houses, stating that she had seen multiple individuals run inside the last house in the row, and officers observed that the back sliding door of that house was open. After speaking with a resident of the house, who informed the officers that her son was inside asleep, officers entered the house to search for the assailants. The police found defendant hiding in the basement and, during the course of the search, seized clothing, cash, cell phones, a rifle scope, and other items that they believed to be incriminating evidence against defendant and the other assailants. We conclude that the People established through that testimony that all three elements of the standard were satisfied (see People v Junious, 145 AD3d 1606, 1608-1609 [4th Dept 2016], lv denied 29 NY3d 1033 [2017], reconsideration denied 29 NY3d 1129 [2017]). [*2]Contrary to defendant's further contention, the court properly determined that the ensuing showup identification procedure, which was conducted soon after defendant was detained as part of the lawful search of the house and during which the robbery victim identified defendant, was not unduly suggestive (see People v Johnson, 202 AD3d 1471, 1471-1472 [4th Dept 2022], lv denied 38 NY3d 1033 [2022]; People v Norman, 183 AD3d 1240, 1240-1241 [4th Dept 2020], lv denied 35 NY3d 1047 [2020]; People v Carson, 122 AD3d 1391, 1391-1392 [4th Dept 2014], lv denied 25 NY3d 1161 [2015]).
We agree with defendant that the court erred in refusing to suppress a .22 caliber magazine that was recovered from defendant's pocket after he was pursued and detained by police as part of a separate incident. At the suppression hearing, the police witness testified that he received a report that two black males wearing dark clothing had fled the scene of an armed robbery. Soon after receiving the report, while driving in the vicinity of the incident, the officer observed two individuals in dark clothing, who fled as soon as the officer stopped his vehicle. The officer could not determine the gender or race of the individuals as he approached because they were facing away from him. Assuming, arguendo, that police lawfully approached defendant and the second individual to request information about the robbery (see People v De Bour, 40 NY2d 210, 220 [1976]), we conclude that the subsequent pursuit of defendant was unlawful. The officer's testimony did not establish that he determined that the individuals matched the sex or race of the robbery suspects before he undertook pursuit, and the evidence was therefore insufficient to demonstrate that the officer had " 'a reasonable suspicion that defendant ha[d] committed or [was] about to commit a crime' " (People v Riddick, 70 AD3d 1421, 1422 [4th Dept 2010], lv denied 14 NY3d 844 [2010], quoting People v Martinez, 80 NY2d 444, 446 [1992]; cf. People v McKinley, 101 AD3d 1747, 1748-1749 [4th Dept 2012], lv denied 21 NY3d 1017 [2013]). Although defendant ran from the officer, "[f]light alone is insufficient to justify pursuit because an individual has a right to be let alone and refuse to respond to police inquiry" (Riddick, 70 AD3d at 1422 [internal quotation marks omitted]; see People v Holmes, 81 NY2d 1056, 1058 [1993]; People v Ross, 251 AD2d 1020, 1021 [4th Dept 1998], lv denied 92 NY2d 882 [1998]).
Defendant further contends that the court erred in refusing to suppress evidence seized from his home pursuant to a search warrant because the application was based on illegally seized evidence and the warrant thus was not supported by probable cause. Although the illegally seized .22 caliber magazine should not have been included among the evidence supporting the warrant application, we conclude that the remaining information in the warrant application—which included the evidence seized during the prior warrantless search of defendant's house, the show-up identification immediately after that search, and additional information linking defendant to multiple robberies through his cell phone use, public Facebook posts, and video evidence—provided probable cause to support the issuance of the search warrant (see People v Herron, 199 AD3d 1476, 1478 [4th Dept 2021]; People v Rhodafox, 134 AD3d 1581, 1582 [4th Dept 2015], lv denied 27 NY3d 1005 [2016]; see also People v Martin, 163 AD2d 865, 865 [4th Dept 1990]).
Although the court further erred in admitting the .22 caliber magazine in evidence at trial, that error is harmless because the evidence of defendant's guilt is overwhelming and there is no reasonable possibility that any error in admitting that evidence contributed to his conviction (see People v Watson, 90 AD3d 1666, 1667 [4th Dept 2011], lv denied 19 NY3d 868 [2012]; see also People v Francois, 208 AD3d 518, 518 [2d Dept 2022], lv denied 38 NY3d 1188 [2022]; see generally People v Crimmins, 36 NY2d 230, 237 [1975]).
Defendant failed to preserve for our review his challenge to the sufficiency of the scientific evidence of his identity as the perpetrator (see People v Gray, 86 NY2d 10, 19 [1995]). In any event, viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that the evidence is legally sufficient to support the conviction (see People v Bleakley, 69 NY2d 490, 495 [1987]). Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we further conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
Defendant contends for the first time on appeal that he was denied his right to counsel because police questioning did not immediately stop upon the arrival of his attorney at the police [*3]station (see People v Grice, 100 NY2d 318, 321-324 [2003]; cf. People v Wade, 164 AD3d 840, 841 [2d Dept 2018], lv denied 32 NY3d 1116 [2018]). "[T]he rule 'authorizing review of unpreserved constitutional right-to-counsel claims' has been applied 'only when the constitutional violation was established on the face of the record' " (People v McLean, 15 NY3d 117, 121 [2010], quoting People v Ramos, 99 NY2d 27, 37 [2002]). Here, because "the record does not make clear, irrefutably, that a right to counsel violation has occurred, the claimed violation can be reviewed only on a post-trial motion under CPL 440.10, not on direct appeal" (id.).
Contrary to defendant's contention, we conclude that the sentence is not unduly harsh or severe. We have reviewed defendant's remaining contentions and conclude that they do not warrant modification or reversal of the judgment.
Entered: March 17, 2023
Ann Dillon Flynn
Clerk of the Court